**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **OLLIE MCWILLIAMS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION 06-0850-WS-C** |
| | ) | |
| **RETIREMENT PLAN OF** | ) | |
| **INTERNATIONAL PAPER,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## ORDER

This matter is before the Court on the defendant's motion for summary judgment. (Doc. 20).  The parties have filed briefs and evidentiary materials in support of their respective positions, (Docs. 21-23, 25-27), and the motion is ripe for resolution.  After carefully considering the foregoing, the Court concludes that the motion for summary judgment is due to be denied.

## BACKGROUND

The plaintiff was employed by International Paper Company for a number of years.  In August 2004, he applied for disability retirement benefits, which the defendant denied.  In the one-count amended complaint, brought pursuant to ERISA, the plaintiff seeks a declaration that he is entitled to disability retirement benefits and accompanying relief.  (Doc. 7).

## DISCUSSION

The controlling definition of disability is provided in plan documents as follows:

"Disability" or "Disabled" means a total disability which is a medically determinable physical or mental impairment or diagnosed terminal illness which renders the Participant incapable of performing any occupation or

employment for which the Participant is qualified by education, training
or experience and which is likely to be permanent during the remainder of
the Participant's life ....

(Doc. 22, Exhibit B at Plan 0075).[1]

The parties agree that the Court's standard of review is "pure" arbitrary and capricious review. (Doc. 21 at 14; Doc. 25 at 11). The defendant asserts that a decision is arbitrary and capricious under this standard if it is not "reasonable," (Doc. 21 at 13-14), and the Court utilizes the defendant's definition. The defendant argues that its decision to deny benefits was not merely reasonable but correct. (*Id*. at 15-21).

In support of its position, the defendant notes that nine health care professionals ("HCPs") "reviewed plaintiff's claim and each concluded that plaintiff's alleged psychiatric and physical impairments failed to render him totally disabled as defined by the Retirement Plan." (Doc. 21 at 16). There is in this assertion a considerable degree of exaggeration. For example, Dr. Miller rendered no opinion as to disability but instead "deferred [his opinion] based on incomplete information available." (Doc. 22, Exhibit C at McWilliams 0041, 0043). Dr. Mansheim concluded the plaintiff was not disabled, but his limited  opinion was that "[n]o *psychiatric* symptoms are reported which would preclude the claimant from functioning occupationally ..." (*Id*. at McWilliams 0045-46, 0047 (emphasis added)). Likewise, Dr. Palmer concluded the plaintiff was not disabled but limited his opinion to the absence of "*psychiatric* limitations to prevent him from working." (*Id*. at McWilliams 0053-54 (emphasis added)).[2] Physical therapist Nichols

---

[1]The plaintiff points to an alternate definition that limits the inquiry to the employee's ability to perform the duties of his current position. (Doc. 25 at 12 (citing Doc. 22, Exhibit B at Plan 0016)). That definition, however, by its terms applies "unless otherwise defined in a Benefit Schedule." The definition quoted in text appears in Benefit Schedule A-1, which schedule applies to the plaintiff's place of employment. (Doc. 22, Exhibit B at Plan 0075).

[2]The plaintiff did not claim to be disabled, in whole or in part, by any mental condition. (Doc. 22, Exhibit C at McWilliams 0009, 0014-15).

-2-

and industrial rehabilitation coordinator Obranovich, in their functional capacity evaluation, concluded only that the petitioner could perform in the "light work" category, without expressing an opinion as to disability.  (*Id*. at McWilliams 0070).

The plaintiff complains about these and other apparent imperfections in the defendant's decision, but only one need be addressed in order to resolve the pending motion.  As noted, the definition of disability includes the requirement that the employee be unable to perform any occupation or employment "for which [he] is qualified by education, training or experience."  That is, it is not enough to conclude (as several HCPs did) that the plaintiff remains capable of performing sedentary (or, according to one report, light) work.  Such a conclusion, to the extent it is sound, shows only that the plaintiff can perform the exertional requirements of a category of jobs described by the Dictionary of Occupational Titles.  The opinions of Drs. Mansheim and Palmer, to the extent sound, show only that the plaintiff has no psychiatric problem that would interfere with his ability to work.  What remains to be considered is whether the plaintiff, given his education, training and experience, is qualified to perform some job in the sedentary (or, perhaps, light) work category.

The defendant was plainly aware that this was a separate consideration.  In the functional assessment form it sent the plaintiff's treating physician, the defendant first asked the physician to identify the exertional category into which the plaintiff fell.  The form then asked, in a separate question, "Does the claimant have the qualification by reason of education, training, or experience to perform the limited sedentary duties for which he/she is physically capable [?]" (Doc. 22, Exhibit C at McWilliams 17).

The defendant nevertheless ignored this aspect of the disability determination in its opening brief.  Instead, it assumed that the HCPs' determinations as to the plaintiff's exertional level, and their conclusions that the plaintiff had no relevant psychiatric problem, of themselves satisfied the disability definition.  (Doc. 21 at 16-18).  After the plaintiff raised the issue in his responsive brief, the defendant addressed it in reply,

offering these arguments: (1) the HCPs were "fully aware of the plaintiff's training, education and experience" when they rendered their opinions that the plaintiff was not disabled; and (2) under the relevant case law, the defendant was not required to obtain vocational evidence. (Doc. 27 at 6-10). The Court addresses these arguments in turn.

None of the HCPs on which the defendant relies expressly found the plaintiff qualified to perform some occupation or employment at the sedentary (or light) exertional level. Only Dr. Mansheim mentioned the requirement at all, and he made clear that he was expressing no opinion on the issue. (Doc. 22, Exhibit C at McWilliams 0045-46 (the plaintiff reported no psychiatric symptoms that would preclude him from working "at any level for which he is adequately prepared by virtue of education, training or experience")). Nichols and Obranovich refused to identify "possible types of work the claimant would be able to perform," precisely because they had insufficient information about job requirements. (*Id.* at McWilliams 0078).

The defendant is left to rely on at least three assumptions: (1) that the HCPs opined sub silentio that the plaintiff is qualified to perform some occupation or employment at a given exertional level; (2) that they had sufficient information about the plaintiff's education, training and experience, and about the non-exertional requirements of various jobs, to do so; and (3) that the defendant relied on the HCPs' unstated opinions in denying benefits. The defendant has identified, and the Court can find, no evidence to support any of these propositions.

As to the first proposition, the defendant appears to suggest that, because the HCPs were provided the definition of disability and concluded that the plaintiff is not disabled, they must have concluded that he was qualified to perform jobs within a given exertional category (since that is part of the definition of disability). (Doc. 27 at 7-8). As noted above, three HCPs offered no opinion that the plaintiff was disabled, and two did so based solely on psychiatric criteria. The remaining four HCPs made it plain in their reports that they did not consider whether the plaintiff is qualified to perform jobs in any

residual exertional category.  Dr. Eng opined only that "Mr. McWilliams would not be considered totally disabled based upon the plan definition of disability as provided, *as he would be capable of performing work within the sedentary category*."  (Doc. 22, Exhibit C at McWilliams 0063) (emphasis added).   Nurse Beastrom concluded the plaintiff was not disabled "PER MEDICAL AND BEHAVIORAL HEALTH IME's [of Drs. Palmer and Eng]," (*id.* at McWilliams 0069), so her opinion goes no further than theirs.  Dr. Pachman and Nurse Christensen, in their joint report, noted the absence of a psychiatric disability and the plaintiff's ability to perform the exertional requirements of sedentary and/or light work and concluded that, "[*a*]*s a result*, I am unable to recommend that the applicant be considered to be permanently and totally disabled ...."  (*Id.* at McWilliams 0088) (emphasis added).

As to the second proposition, while it appears that some of the HCPs had access to some information about the plaintiff's background, there is no suggestion that any of the HCPs had information about the non-exertional requirements of any job or jobs in the sedentary or light exertional categories.  There is certainly no reason to assume a priori that a psychiatrist, physiatrist, occupational clinical psychologist, or R.N. is sufficiently conversant in such matters to offer a credible opinion.  The only HCPs whose job titles — physical therapist and industrial rehabilitation coordinator —  might suggest such familiarity expressly disavowed any opinion as to the plaintiff's ability to perform particular jobs.  (Doc. 22, Exhibit C at McWilliams 0078).

As to the third proposition, the defendant has identified no evidence that it relied on any supposed medical opinion that the plaintiff is qualified by reason of education, training or experience to perform any light or sedentary employment.  On the contrary, the defendant's internal notes reflect that benefits were denied simply because the plaintiff "was deemed capable of light or sedentary work."  (Doc. 22, Exhibit C at McWilliams 0007).  After the plaintiff appealed the decision, the defendant's internal notes reflect that the appeal was denied because the plaintiff again  "was deemed capable

of light or sedentary work."  (*Id*. at McWilliams 0101).  There thus appears to be no evidence that the defendant — either in review of the HCPs' opinions or on its own — considered whether the plaintiff was qualified by education, training or experience to perform any jobs in a residual exertional category.

This leaves the defendant to its fallback argument: that the case law allowed it to deny benefits without vocational evidence.  In *Duhon v. Texaco, Inc*., 15 F.3d 1302 (5th Cir. 1994), the Court stated it "will not hold that absent vocational rehabilitation evidence a plan administrator necessarily abuses his discretion in making a final determination of disability."  *Id*. at 1309.  "Instead, we will allow the reviewing court to decide, on a case-by-case basis, whether under the particular facts the plan administrator abused his discretion by not obtaining the opinion of a vocational rehabilitation expert."  *Id*.  The defendant reads *Duhon* for the proposition that, whenever there is "clear evidence of record" that the plaintiff can perform light and sedentary work, vocational evidence is unnecessary.  (Doc. 27 at 8-9).

The applicability of *Duhon* to this case remains unclear.  First, of course, it is not a decision of the Eleventh Circuit.  Second, the definition of disability at issue in *Duhon* was more lax than that in this case.  In *Duhon*, an employee could not be disabled if he "may become" qualified for another job, which definition precluded disability if the employee, although presently unqualified for any job, could become qualified in the future by training or otherwise.  Here, in contrast, an employee is disabled unless he is currently qualified for another job, and the possibility of future qualification (which typically would expand the range of available jobs) is irrelevant.

Ultimately, *Duhon* is unhelpful to the defendant because it addresses a different situation.  In *Duhon*, the plan administrator "conclude[d] that [the plaintiff] would be able to perform the functions of some identifiable job," albeit without identifying any particular such job.  15 F.3d at 1308.  That is, the defendant addressed the element of qualification for another job and resolved it adversely to the employee.  Here, as noted

above, the evidence suggests that the defendant never considered whether the plaintiff was qualified for another job but based its decision solely on the plaintiff's residual exertional category and his lack of psychiatric disability. (Doc. 22, Exhibit C at McWilliams 0007, 0101). While *Duhon* excuses the failure to obtain specific vocational evidence in some cases, it does not purport to excuse the failure to address the requirement of qualification for another job altogether. Nor has the defendant attempted to show that the Eleventh Circuit upholds denials of benefits when the administrator has failed to address an essential aspect of such a determination.

## CONCLUSION

Because the defendant has not offered evidence that the plaintiff is qualified by education, training or experience for a job within his residual exertional capacity, it has not met its initial burden on motion for summary judgment of showing that its decision was correct.[3] Because the defendant has left critical legal and factual issues unanswered, it has not met its initial burden of showing that its decision was reasonable. Because of these deficiencies, the Court need not reach the plaintiff's other arguments.

For the reasons set forth above, the defendant's motion for summary judgment is **denied**.

DONE and ORDERED this 17th day of September, 2007.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE

---

[3] That the plaintiff has been found to be disabled by the Social Security Administration, (Doc. 22, Exhibit C at McWilliams 94), does not bolster the defendant's argument that its decision was correct.

-7-